IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

LORRAINE D. STOCKFORD-CLARK,   )
                                    )
              Plaintiff,        )       Case No. 03-3052-KI
                                    )
    vs.                         )       OPINION AND ORDER
                                    )
SOCIAL SECURITY ADMINISTRATION, )
                                    )
             Defendant.     )

       Arthur Wilber Stevens, III
       Black Chapman Webber & Stevens
       221 Stewart Ave., Suite 209
       Medford, Oregon  97501

            Attorney for Plaintiff

       Craig J. Casey
       United States Attorney's Office
       1000 S. W. Third Avenue, Suite 600
       Portland, Oregon  97204-2902

- and -

Terrye E. Shea
Social Security Adminstration
Office of General Counsel
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Lorraine D. Stockford-Clark brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB").

## BACKGROUND

Stockford-Clark filed an application for DIB with a protected filing date of January 28, 1998.  The application was denied initially and upon reconsideration.  After a timely request for a hearing, Stockford-Clark, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on June 11, 1999.

On September 24, 1999, the ALJ issued a decision finding that Stockford-Clark was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

Stockford-Clark appealed the decision to the District Court of Oregon.  On July 14, 2004, under sentence six of 42 U.S.C. § 405(g), I remanded the case to the ALJ for consideration of evidence that had been submitted to the Appeals Council but not to the ALJ during the initial hearing.  In the Opinion, I held:

In my first opinion, I held:

Page 2 - OPINION

Medical reports generated after an ALJ's decision may be material to a determination of whether the claimant was disabled prior to the date of the adverse decision. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988). To be material, the new evidence offered must bear directly and substantially on the matter in dispute. Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984). Here, most of the reports relate back to Stockford-Clark's complaints of low back pain, neck and right arm pain, which were at issue before the ALJ. The surgery described and the other records may be seen as identifying *a source* of Stockford-Clark's pain, about which she complained, but for which the ALJ found there to be a lack of objective medical findings. A review of the new evidence might affect the ALJ's credibility determination with respect to Stockford-Clark's reported pain and limitations. Given that the surgeries performed were for conditions that were degenerative in nature (e.g., degenerative disc disease), thus deteriorating over time, there is at least a possibility that this evidence could support a finding of disability during the claimed period before the actual surgeries were performed.

Tr. 643-44.

Stockford-Clark, again represented by counsel, appeared and testified before the ALJ on June 27, 2005. On January 23, 2006, the ALJ issued a second decision finding Stockford-Clark not disabled. Stockford-Clark appeals this conclusion.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§

423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the

burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir.

2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the

claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity,

disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines

whether the claimant has a medically severe impairment or combination of impairments.  A

severe impairment is one "which significantly limits [the claimant's] physical or mental ability to

do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not

have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine

whether the impairment is equivalent to one of a number of listed impairments that the

Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R.

§§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled.  If the impairment is not one that is

presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the

impairment prevents the claimant from performing work which the claimant performed in the

past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

///

**FACTS**

Page 5 - OPINION

I.      Stockford-Clark's History

Stockford-Clark, who was 40 at the time of the initial hearing, alleges that she is disabled due to musculoskeletal impairments including knee problems, right shoulder problems, difficulties using her hands, low back pain, migraine headaches, neck pain, and chronic pancreatitis.  She alleges disability beginning in 1995.  Her date last insured, for purposes of disability insurance benefits, was December 31, 1998.  To be eligible for disability insurance benefits, she must establish that she was disabled on or before her date last insured.

Stockford-Clark has an eighth-grade education and past work experience as an agricultural worker, janitor, house cleaner, cab driver, pizza delivery person, and pear sorter.

In her first hearing, Stockford-Clark explained that she had received shoulder surgery and multiple surgeries on her knees.  She had difficulties walking downhill and up and down stairs. She had difficulties reaching, stretching or pulling with her arms.  She stated that her arm "knots up from the shoulder all the way down."  Tr. 87.  She experienced pain, soreness and stiffness in her neck.  She testified that her husband did the driving because she could not turn her neck.

She testified that she mostly spent her days lying in bed or sitting in her recliner chair. She testified that she did very few household chores.  Her husband was also on disability but was able to do some chores such as dishes.  He did the cooking.  Stockford-Clark's grandmother, who lived with her and her husband, did the rest of the household chores.

In the second hearing, Stockford-Clark explained that she underwent a low back fusion at L5-S1 in September of 1999, performed by Thomas J. Purtzer, MD.  The fusion did not set and Stockford-Clark underwent a second fusion six months later, as well as a lumbar decompression at L4-5.  She explained that her back had been bothering her for 15 years.  In December of 2000,

Page 6 - OPINION

Stockford-Clark underwent a neck fusion at the C4-5 and C5-6 levels.  Stockford-Clark also

testified that she works about 50 hours a month taking care of her grandmother, and gets paid

between $400 and $500 a month.  She ensures that her grandmother takes a shower and takes her

medication.[1]

The medical reports reviewed by the ALJ during the second hearing were Dr. Purtzer's

operative report and discharge summary describing Stockford-Clark's lumbar spine diskectomy

and fusion in 1999, and her follow-up fusion surgery and decompression in 2000.  The records

also included Dr. Purtzer's reports of Stockford-Clark's diagnosis of cervical radiculopathy

secondary to cervical spondylosis, and related decompression with fusion surgery.  The records

also include a sleep study conducted by Eric S. Overland, MD from October of 2000, testing

plaintiff's sleep disorder.

II.    The ALJ's Decision

The ALJ found that Stockford-Clark had severe disorders of the right and left shoulders;

impairment of the left knee; low back disorder; pancreatitis and gall bladder disease; headaches;

and gastroesophageal reflux disease ("GERD"); but that she did not have an impairment or

combination of impairments that met or equaled one of the listed impairments.

The ALJ also found that Stockford-Clark's allegations regarding her limitations were not

totally credible.

The ALJ initially concluded plaintiff could perform light work, without additional

---

[1]The Commissioner notes that plaintiff earned $8,551.80 in 2004, which means plaintiff received $712.65 in monthly earnings.  The Commissioner points out that this is significantly more than the $400 to $500 plaintiff admitted to earning.  This was not a factor considered by the ALJ, and it will not affect my decision.

functional limitations.

The ALJ alternatively opined:

[Stockford-Clark] retains the ability to perform a reduced range of light work. In addition to the criteria for light work set forth at 20 CFR 404.1567, [Stockford-Clark] can sit, stand, or walk for one half hour at a time. She could do these activities for six hours each, in an eight hour day. [Stockford-Clark] would not be able to push and pull with the right hand and could not reach from the shoulder to six feet in height with either the right or left hands. She should only occasionally perform overhead activity, or flex and abduct with the shoulder. She should only occasionally bend, squat, stoop, twist, crawl, kneel, climb or drive automobile equipment. [Stockford-Clark] could not be more than occasionally exposed to changes in temperature and humidity, or to use of automotive equipment.

Tr. 594, 605.

The ALJ concluded that Stockford-Clark was able to perform her past relevant work as a pear sorter. The ALJ also concluded that, relying on the alternative residual functional capacity, Stockford-Clark could perform light work with the limitations noted above in other jobs of significant numbers in the national economy, including parking lot attendant and telemarketer.

**DISCUSSION**

I.      Severity of Cervical Spine Disorder

Plaintiff argues that the ALJ should have considered plaintiff's cervical spine disorder to be a severe impairment.[2] The Commissioner responds that the ALJ considered plaintiff's complaints of cervical pain "as well as her treating and examining physicians' conclusions that Plaintiff's cervical pain complaints were not supported by objective findings." Defendant's Brief at 10, citing Tr. 594-605.

_____

[2]Plaintiff sets forth as a separate assignment of error her argument that the ALJ failed to adequately consider Dr. Purtzer's medical reports. I have addressed this argument where the medical evidence is relevant to the ALJ's decision, e.g. plaintiff's credibility and the severity of plaintiff's cervical spine disorder.

It is plaintiff's burden to establish that she suffers from a "disability" under the Act, which is defined in part to be a "medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  An impairment or a combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  In addition, plaintiff bears the burden of proving that she suffered from the disability "prior to the date upon which her disability insured status expire[d]."  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

The ALJ erred in failing to consider plaintiff's cervical pain a severe impairment.  Prior to the date last insured, plaintiff repeatedly complained of neck pain.  Alan J. Webb, M.D. noted anterior cord impingement and mild to moderate central canal stenosis at C4-5 and C5-6 (as well as foraminal stenosis at C4-5).  Tr.453.  Michael W. Potter, M.D. reported "bad looking joints at C5-6 and C4-5" based on a myelogram and stated, "[s]he does have clear neck pain."  Tr. 554.  Dr. Purtzer subsequently diagnosed "cervical radiculopathy" secondary to cervical spondylosis.  Tr. 676 and 679.  Given this evidence in the record, any conclusion that plaintiff's neck pain had only a minimal effect on her ability to work, and should not be considered a "severe" impairment, was error.[3]

II.    Listing Determination

_____

[3]The effect of this error, whether harmless or not, will be determined in the section evaluating plaintiff's residual functional capacity.

Plaintiff implies that the ALJ failed to consider her combined impairments, in violation of

20 CFR § 404.1526, in concluding that "[n]o impairment or combination of impairments is

shown to meet or equal the criteria of an impairment described in Appendix 1, Subpart P,

Regulations No. 4.  No medical source has established that any section of Appendix 1 has been

met or equaled through the date last insured."  Tr. 594; Pl.'s Reply at 5.

Stockford-Clark bears the burden of proving that she has an impairment that meets or

equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations.

Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).  Plaintiff does not identify the listings that

are implicated by her impairments.  As a result, plaintiff has failed to meet her burden.  I find that

the ALJ did not err in his conclusion.

III.    Plaintiff's Credibility

The heart of this dispute is the ALJ's analysis of plaintiff's credibility, especially in light

of Dr. Purtzer's evaluation of plaintiff.

When deciding whether to accept the subjective symptom testimony of a claimant, the

ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce

objective medical evidence of one or more impairments; and (2) show that the impairment or

combination of impairments could reasonably be expected to produce some degree of symptom.

Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  The claimant is not required to

produce objective medical evidence of the symptom itself, the severity of the symptom, or the

causal relationship between the medically determinable impairment and the symptom.  The

claimant is also not required to show that the impairment could reasonably be expected to cause

the severity of the symptom, but only to show that it could reasonably have caused some degree

Page 10 - OPINION

of the symptom. Id. at 1282.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

With regard to plaintiff's cervical impairment, the ALJ questioned whether there was objective evidence supporting the problem. Tr.603. Despite Dr. Webb's diagnosis of anterior cord impingement, mild to moderate central canal stenosis at C4-5 and C5-6, and foraminal stenosis at C4-5, Tr.453, Dr. Webb concluded that surgery was not recommended at that time. His opinion was based on the decisions of two doctors to whom Dr. Webb had referred plaintiff. Peter Grant, M.D. diagnosed chronic myofascial pain, and found no evidence of right cervical radiculopathy. Tr. 422. Dr. Potter, although noting the "bad-looking joints," found no cervical herniation and no significant neural impingement. Tr. 554. The ALJ concluded that Dr. Purtzer's decision to proceed with surgery did not change the ALJ's opinion that plaintiff was not suffering from a neck problem.

The ALJ held plaintiff to a higher standard than is required by the law. Plaintiff is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Plaintiff produced objective evidence of her cervical impairment, in the form of a diagnosis by Dr. Webb as well as Dr. Purtzer, and even though Dr. Webb, Dr. Grant and Dr. Potter did not believe that the diagnosis explained the severity of plaintiff's symptoms, plaintiff met her burden.

Page 11 - OPINION

Similarly, I reject the ALJ's implication that plaintiff failed to produce objective evidence of her lower back impairment. Dr. Purtzer diagnosed her with lumbago with sciatica and found a "severely degenerated L5-S1 joint space." Tr. 578, 666. The ALJ improperly relied on Dr. Rich's conclusion. Dr. Rich evaluated plaintiff to determine whether her lower back pain was attributable to a 1984 injury, and stated only that he did not have "a medical basis upon which to base her *current* back complaints." Tr. 435 (emphasis added). Dr. Purtzer supplied this medical basis. Therefore, plaintiff met her burden by producing some objective evidence of her lower back impairment.

However, the ALJ's error in this regard is harmless as he made an alternative finding that even if plaintiff demonstrated underlying impairments, other evidence in the record undermined her testimony as to the severity of her symptoms. The question is whether the ALJ gave clear and convincing reasons for finding plaintiff's testimony not credible.

The ALJ mentioned a number of observations that affected plaintiff's credibility in his eyes. The ALJ pointed out that Dr. Potter noted plaintiff had grease and oil on her hands, and when the doctor questioned her about it, she said she had been trying to repair her car. She described herself to her doctors as doing "well" and in "good general health" on a number of occasions. None of her physicians found her to be disabled, and a number found her capable of performing light to medium range work.

The ALJ also noted that David W. Rich, M.D. and William C. Rand, M.D. remarked that plaintiff's severe pain behavior undermined the quality of the test results, and that Heidi L. Jacobsen, M.D. commented that plaintiff limited her visit to discussing a single problem even though she later explained she had been suffering from other impairments. Tr. 370. In addition,

Page 12 - OPINION

the ALJ observed that Anthony L. Glassman, M.D. released plaintiff to modified work, finding

that although plaintiff may have been experiencing problems with her right arm, and despite her

hesitancy, she could do a job that only required her to hold a one-pound radio with her left hand

and watch a loading dock.

The ALJ also mentioned that plaintiff may have a disability mind-set since her husband is

receiving disability payments, or that her complaints may have been motivated by litigation since

Dr. Potter encouraged her to terminate the litigation as part of her treatment.

With regard to plaintiff's headaches, the ALJ observed that plaintiff had not received any

specific treatment for them and that there was no evidence they could not be treated with

medication.

In response to plaintiff's complaints about chest and abdominal pain, the ALJ concluded

the symptoms were attributable to gastrointestinal complaints and had no "significant functional

consequences." Tr. 604.

Plaintiff argues the ALJ incorrectly considered Dr. Potter's report that plaintiff had grease

and oil on her hands. According to plaintiff, Dr. Potter does not say what task plaintiff was doing

and whether it was something she had to stop doing because of her limitations. Although Drs.

Rich and Rand noted severe pain behavior, they did not indicate this was a basis on which to

question plaintiff's credibility. Additionally, in response to Dr. Jacobsen's comments, plaintiff

points out that Dr. Rich stated plaintiff could "compartmentalize her claims and injuries," noting

that she did not mention her shoulder pain during his examination of her low back complaints.

Tr. 435. In response to the ALJ's observation that plaintiff had received little treatment for her

headaches, plaintiff argues that she saw Larry J. Maukonen, M.D. for treatment of her headaches,

Page 13 - OPINION

but that she could not afford further treatment because she had no health insurance.  She explains

that her other health problems "have forced doctor and hospital visits" due to their severity.  Pl's.

Opening Brief at 22.  Plaintiff also argues that the ALJ should have taken into consideration her

persistent hospital and doctor visits due to her chest and abdominal pain.

I accept plaintiff's argument that her exhibition of "pain behavior" is not a basis on which

to question her credibility, only a basis on which to question the validity of the testing.  As

repeatedly reported by Drs. Rich and Rand, her pain behavior made it difficult to test her to find

an objective basis for her complaints.  Nevertheless, they found she had "limitations with

repetitive use of the shoulder on a subjective pain basis."  Tr. 220.

However, I reject the remainder of plaintiff's arguments.  The ALJ's reference to Dr.

Potter's observation about the grease and oil on plaintiff's hands is a fair basis on which to

question plaintiff's credibility.  She testified that when she is holding a glass it slides through her

hands and falls, that it takes her days to write checks to pay her bills, and that she spends most of

her day lying down or in a recliner.  The fact that she was undertaking car repairs, tasks requiring

fine manipulation and standing, is illuminating.

Similarly, the fact that Dr. Rich remarked that plaintiff has the ability to

"compartmentalize" her complaints does not undermine the persuasive force of Dr. Jacobsen's

comment.  Dr. Rich's remarks are based on specialist visits separated by months.  In contrast, Dr.

Jacobsen stated, "Patient is a 38-year-old female well-known to Urgent Care.  Interestingly, she

was thoroughly evaluated here *yesterday* for chest pain.  In the midst of this evaluation, she did

not give any symptoms that she is now reporting have been present for 2-3 days."  Tr. 370

(emphasis added).  Again, this is a fair basis on which to question plaintiff's credibility.

The ALJ correctly pointed out that there was no evidence in the record that plaintiff's headaches could not be treated with ordinary medications. In addition, plaintiff cites to no place in the record where she complained to her physicians about headaches during the relevant period, and I cannot find any. Dr. Rich's reference to her self-report that she saw a physician for migraines "several years ago" does not support her claim of recurrent migraines, given the absence of complaints to her treating physician about headaches. Tr. 433. Additionally, plaintiff's reports to her doctors that she was doing "well" or in "good general health" on a number of occasions during the relevant period are relevant to a determination about plaintiff's credibility.

Dr. Glassman's remark questioning the reasons for plaintiff's hesitancy about a job that appeared to meet her limitations is especially persuasive evidence of plaintiff's tendency to exaggerate her symptoms. He noted that plaintiff was hesitant about a job that involved her holding a one pound radio and watching a loading dock to notify a superintendent of arriving trucks. She could sit in a chair with back support. Plaintiff told Dr. Glassman she was concerned about whether she could do the job given her limitations on squatting.

With regard to plaintiff's chest and abdominal pain, the ALJ correctly pointed out that it was determined plaintiff was not suffering from a cardiac abnormality, and that plaintiff could be "a reliable worker within the context of expected allowances for medical care." Tr. 604. Plaintiff focuses on the number of hospital and doctor visits she underwent in 1997, 1998 and 1999. However, in total, these amount to only a handful of visits clustered around the same time. She was admitted to the hospital for chest pain on August 8, 1997, and had follow-up visits to her physician's office on August 28, September 4 and September 12. Plaintiff was thought to

Page 15 - OPINION

have chest pain, secondary to an anxiety disorder.  Tr. 327.  She sought treatment for lower

abdominal pain only twice in 1998, separated by two days, and the pain was thought to be related

to low back pain.  Tr.333.  The visits in 1999 occurred after her date last insured.  Accordingly,

the ALJ's conclusion that plaintiff was not functionally limited by any chest or abdominal pain,

and that these doctor visits were not outside the normal allowances for medical care, is supported

by substantial evidence.

Most importantly, as the ALJ pointed out, no doctor ever stated that plaintiff was limited

to the extent she claims.  Indeed, multiple physicians completed functional assessments during

the relevant period, and even after the date last insured, finding that plaintiff could perform light

to medium work.

Plaintiff complains that the ALJ relied on reports which were limited to the condition or

conditions being evaluated by the reporter, and limited by that reporter's specialty.

Although each report is focused on specific impairments, together they paint an

overwhelming picture of plaintiff's abilities.  For example, on August 15, 1997, Richard C.

Arbeene, M.D. and Jacob H. Wilson, M.D. found plaintiff able to perform light to medium work

despite her neck and shoulder pain, and considering her chest pain.  Tr. 274.  Roy Patton, M.D.

found plaintiff able to perform light work in March 1998, despite her low back pain, pancreatitis,

neck pain, and shoulder pain, and Linda Jensen, M.D. agreed on June 25, 1998, considering

plaintiff's shoulder, back, pancreatitis, arm and left knee pain.  Tr. 400-07, 475-82.

Dr. Webb, a treating physician who had heard all of plaintiff's complaints about neck,

back, shoulder, and knee pain, agreed with a May 1998 report, which opined that plaintiff was

able to perform light work.  Tr. 437-71.  Indeed, that report explicitly noted that its findings were

Page 16 - OPINION

in consideration of plaintiff's self-report that she is restricted by back and left knee pain.

Dr. Grant evaluated plaintiff on April 23, 1998, finding that plaintiff could perform light to medium work, despite her reported neck, shoulder, and arm problems. Tr. 472. He evaluated her again on February 1, 1999, and issued a March 9, 1999 report, finding she could perform medium work, specifically addressing her neck, shoulder and upper extremity problems, but also considering her left knee impairment.

As the ALJ pointed out, the persuasive effect of these studies is not undermined by Dr. Purtzer's suggestion to proceed with surgery. Plaintiff met with a number of physicians about her pain, and underwent extensive diagnostic testing, and none of these physicians opined that plaintiff was unable to work. Even Dr. Purtzer never stated plaintiff was unable to work; he merely offered surgery as a potential means of resolving plaintiff's pain.

Accordingly, I find that the ALJ gave clear and convincing reasons supported by specific facts in the record in rejecting the extent of plaintiff's claimed limitations.

IV.     Past Relevant Work

The ALJ initially concluded that plaintiff could perform light work, without expressing any relevant, additional limitations.

The vocational expert testified that plaintiff could work as a pear sorter, her past relevant work.

In order to come to the conclusion that plaintiff could work as a pear sorter, the vocational expert relied on the 1998 evaluation prepared by Dr. Grant. However, at the time Dr. Grant prepared this assessment, it does not appear that he was aware of plaintiff's left knee problems. Tr. 409-11. Hypothetical questions posed to a vocational expert must specify all of

the limitations and restrictions of the claimant.  <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir.

1991).  Since the hypothetical did not contain all of plaintiff's limitations, the vocational expert's

opinion that plaintiff could perform her past relevant work is not supported by substantial

evidence in the record.

V.      <u>Perform Other Work</u>

The ALJ made the alternative finding that plaintiff could perform light work, but with

additional limitations.  He found she can sit, stand, or walk for one half hour at a time, for six

hours each in an eight hour day.  She cannot push and pull with the right hand and cannot reach

from the shoulder to six feet in height with either the right or left hands.  She should only

occasionally perform overhead activity, or flex and abduct with the shoulder.  She should only

occasionally bend, squat, stoop, twist, crawl, kneel, climb or drive automobile equipment.  Based

on the testimony of a vocational expert at the first hearing, the ALJ concluded plaintiff could

work as a telemarketer or parking lot attendant.

The Commissioner has the burden in step five, and can satisfy this burden by eliciting the

testimony of a vocational expert with a hypothetical question that sets forth all the limitations of

the claimant.  <u>DeLorme</u>, 924 F.2d at 850.  The assumptions in the hypothetical question must be

supported by substantial evidence.  <u>Id.</u>

Plaintiff argues that the ALJ failed to consider all of plaintiff's combined impairments in

crafting a residual functional capacity assessment for her.  In addition, plaintiff asserts that the

ALJ should have called a vocational expert to testify in the second hearing.

The ALJ relied on the March 1999 assessment of plaintiff's abilities produced by Dr.

Grant. Dr. Grant's report was based on his recognition of plaintiff's complaints of neck pain,[4]

shoulder pain, and left knee impairment, and was based on his examination of her in February.

Dr. Grant's analysis did not explicitly account for plaintiff's low back problems. However, both

Drs. Patton and Jensen considered plaintiff's low back pain, and determined that plaintiff could

stand/walk with normal breaks for six hours in an eight-hour day, and sit for six hours in an

eight-hour day. Based on these assessments, Dr. Grant's capacity evaluation adequately reflects

all of plaintiff's limitations. The vocational expert relied on these functional limitations in

opining that plaintiff could perform other work in the national economy. Given my conclusions

above, no further testimony of a vocational expert was required.

Plaintiff argues that the ALJ erred in relying on the Medical Vocational Guidelines at 20

C.F.R. pt. 404, subpt. P, app.2 (the "Grids") without consulting a vocational expert. However,

the ALJ explicitly referred to the testimony of the vocational expert in the first hearing in finding

plaintiff could perform other work in the national economy, because the Grids did not adequately

reflect all of plaintiff's limitations. Similarly, plaintiff claims that she cannot do the light work

the vocational expert believed because she is not capable of the prolonged standing or walking

contemplated for most light work, citing Social Security Ruling 83-12. Again, however, the ALJ

did not rely on a finding that plaintiff could perform light work. Rather, his hypothetical

question included limitations on sitting, standing and walking, and the vocational expert's

opinion was based on those limitations.

As a result, the ALJ's determination that plaintiff is capable of performing other jobs in

---

[4]Since Dr. Grant's assessment accounted for plaintiff's neck pain, any error the ALJ
committed in failing to consider plaintiff's cervical impairment a severe impairment is harmless.

Page 19 - OPINION

the national economy is supported by substantial evidence in the record.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and

the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this _9th_ day of February, 2007

 /s/  Garr. M. King

GARR M. KING
United States District Court Judge

Page 20 - OPINION